607 P.2d 606

**The NEW MEXICO LIVESTOCK BOARD, Petitioner,**

v.

**Donn J. DOSE, Mary Dose, his wife, and Roy Dose, their son, Respondents.**

**No. 12602.**

Supreme Court of New Mexico.

March 3, 1980.

Jeff Bingaman, Atty. Gen., Albert L. Pitts, Asst. Atty. Gen., Santa Fe, for petitioner.

Payne, Mitchell & Wilson, Gary C. Mitchell, Ruidoso, for respondents.

## OPINION

FELTER, Justice.

Respondents, Donn J. Dose, et al., who are the Plaintiffs-Appellees (hereafter Doses), brought suit against Petitioner, the New Mexico Livestock Board, who is the Defendant-Appellant (hereafter Board), for conversion and loss of livestock. After a non-jury trial on the merits, Plaintiffs, Dos-

es, were awarded judgment. From an affirmance by the Court of Appeals, the Board petitioned this Court for a writ of certiorari. We reverse the decision of the trial court and affirm in part and reverse in part the decision of the Court of Appeals.

Three questions are presented to this Court for decision:

I. Does the District Court of Bernalillo County lack jurisdiction because of the venue statutes fixing venue in Santa Fe County for suits against the State, its officers and employees? § 5–13–11(B), N.M.S.A.1953 (Repl.1974, Supp.1975) (*repealed* N.M.Laws 1976, ch. 58, § 27); § 38–3–1(G), N.M.S.A.1978.

II. Is·the claim of non-coverage under the terms of the Faithful Performance Bond unavailable to the Board, and is this a defense that can only be asserted by the bonding company, a non-party?

III. Does the Faithful Performance Bond contain liability insurance to cover the claim of the Doses thereby precluding sovereign immunity as a defense?

We shall treat each of the three questions before us separately in the order in which we have listed them.

### I.

The issue of improper venue is raised by the Board for the first time in its petition for certiorari to this Court. The issue being labeled as a jurisdictional one arises where the Board asserts that the District Court of Bernalillo County, where the case was tried, was without jurisdiction by reason of the venue statutes, § 5–13–11(B) (*repealed*, 1976 N.M.Laws, ch. 58, § 27); § 38–3–1(G).

■ A want of jurisdiction may be claimed at any time, even after judgment and for the first time on appeal. *Chavez v. County of Valencia*, 86 N.M. 205, 521 P.2d 1154 (1974); (other cites omitted).

■ In *Bumpers v. Wallace*, 56 N.M. 462, 245 P.2d 383 (1952), this Court held that, either by its own motion or when raised for the first time on appeal, it may take notice of such want of jurisdiction. Since the question of jurisdiction is raised in the petition for writ of certiorari, it is a matter that should be dealt with by this Court.

■ In early decisions by this Court, venue was equated with jurisdiction, or was not distinguished from jurisdiction. Those cases were expressly overruled by the decision in *Kalosha v. Novick*, 84 N.M. 502, 505 P.2d 845 (1973).

Neither in *Kalosha v. Novick*, nor in any of the cases which it specifically overrules on the issue of equating venue and jurisdiction, is there involved an action against the state or its officers or employees. *Kalosha* does not speak directly to the issue of whether venue in an action against the state, its officers or employees is jurisdictional.

In an original prohibition action challenging venue in Bernalillo County in a suit against a state officer, *State ex rel. Bureau of Revenue v. MacPherson*, 79 N.M. 272, 442 P.2d 584 (1968), this Court held that Section 21–5–1(G), N.M.S.A.1953 (now Section 38–3–1(G)) clearly and unequivocally "is jurisdictional on its face." *Id.* at 273, 442 P.2d at 585. An identical ruling was made in *Allen v. McClellan*, 77 N.M. 801, 427 P.2d 677 (1967), (*Allen II*), except for the fact that in *State ex rel. Bureau of Revenue v. MacPherson* there was a challenge to venue before trial, and in *Allen II* it appears that the issue was raised initially but not considered in a prior appeal (*Allen v. McClellan*, 75 N.M. 400, 405 P.2d 405 (1965), (*Allen I*)). In *Allen II* this Court ruled that Section 21–5–1(G) is jurisdictional.

It would be most difficult to distinguish *Kalosha* from *MacPherson* and *Allen II* upon the basis of the statutory language that they respectively pertain to.

The statutory language applicable in *Kalosha* is contained in Section 21–5–1(D)(1) (now Section 38–3–1(D)(1), which in pertinent part reads as follows:

All civil actions commenced in the district courts *shall be* brought and *shall be* commenced in counties as follows, *and not otherwise*:

D. (1) When lands or any interest in lands are the object of any suit in whole or in part, such suit *shall be* brought in the county where the land or any portion thereof is situate. . . . (Emphasis added.)

The statutory language which is applicable in *MacPherson* and *Allen II*, is contained in Section 21–5–1(G) (now Section 38–3–1(G)), which in pertinent part reads as follows:

All civil actions commenced in the district courts *shall be* brought and *shall be* commenced in counties as follows, *and not otherwise*:

.   .   .   .   .

G. suits against any state officers as such *shall be* brought in the court of the county wherein their offices are located, at the capitol [capital] *and not elsewhere.* (Emphasis added.)

■ The statutory language respectively applicable to *Kalosha, MacPherson* and *Allen II* has a mandatory tone. But there is nothing in the statutes, per se, to canonize any one section as jurisdictional, and in the same ceremony damn the other sections to the lowly status of venue. Indeed, in *Kalosha*, in the face of such mandatory terms as "shall be" and "not otherwise", we held that the statute related to venue, and was not to be equated with jurisdiction. *Id.* 84 N.M. at 505, 505 P.2d at 848. We know of no logical reason why the salutary ruling in *Kalosha* may not be declared specifically to· encompass suits against the state and its officers and employees as well as private litigants. We now hold that venue may not be equated with jurisdiction in suits against the state, its officers or employees. To the extent that venue and jurisdiction are equated, and to the extent that Section 38–3–1(G), has been held to be jurisdictional, we overrule prior cases so holding, to-wit: *MacPherson* and *Allen II.* As the facts in *Kalosha* were found to constitute a waiver of venue, obviating objection to venue in Santa Fe County, so also would the facts in the case at bar clearly create a waiver of venue in Santa Fe County, obviating objection to venue in Bernalillo County.

■ In any case where the vital interests of the State or the practical necessity to or convenience of the State dictate that a suit to which it is a party be tried in Santa Fe County, such interests, necessities or convenience may be protected by challenging venue in any other county, and by not waiving venue in Santa Fe County. We cannot conceive of how taking advantage of such measures to protect venue would be any more difficult for the State acting through its attorneys than it would be for private litigants acting through their attorneys. We know of no compelling requirement of state government that would command that we have different rules relating to waiver of venue for public and private parties litigant.

■ It is the ruling of this Court that venue in Santa Fe County was waived and that there was no jurisdictional impediment to the trial of this case in Bernalillo County.

## II.

The Doses seek to have the Faithful Performance Bond decreed so as to contain liability insurance coverage of their claim against the Board. In this connection, the Doses argue that the Board should be precluded from asserting non-coverage under the bond because this defense belongs to the bonding company, a non-party, and such a defense can only be asserted by the bonding company. In support of this position, the Doses cite *Western Farm Bureau Mutual Ins. Co. v. Barela*, 79 N.M. 149, 441 P.2d 47 (1968). In that case, this Court merely held that a suit by an employee against his employer in tort was no bar to an action for a declaratory judgment by the employer's insurance carrier to determine its liability to investigate, adjust or defend the tort action.

Here the Board has asserted the defense of sovereign immunity because of a lack of liability insurance to cover the claim of the Doses. If the Board can show that the Faithful Performance Bond does not contain liability insurance to cover the claim of

the Doses, then it may validly assert sovereign immunity as a defense. *Western Farm Bureau Mutual Ins. Co. v. Barela* is not, as the Doses claim, authority for the proposition that a defense of sovereign immunity may not be made. We have found no authority for the proposition that the state may be precluded from showing that it has no insurance coverage, a condition precedent to a successful sovereign immunity defense. Certainly the law will not relegate a defendant to a naked defense, stripped of the right to claim and prove why that defense exists.

Such a rationale effectively would abolish sovereign immunity as a defense to an event of occurrence in April and May of 1976, something that was not done until, and was then done only prospectively, from and after July 1, 1976 by *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1976). Non-coverage of liability insurance is and was an integral, inseparable component of the defense of sovereign immunity, and all components of that defense were available to the Board. If it were otherwise, the defense itself would not be available to the Board.

The applicable statute which governed the events of April and May, 1976 giving rise to this lawsuit is Section 5–13–4, N.M. S.A.1953 (Supp.1975) (*repealed*, 1976 N.M. Laws, ch. 58, § 27, effective July 1, 1976 by terms of 1976 N.M.Laws, ch. 58, § 29). Insofar as pertinent it stated that:

> Provided, however, no judgment shall run against the state or a local public body unless there is liability insurance to cover the amount and cost of such judgment . . . .

Thus, it clearly appears that in order to resolve the validity of the defense of sovereign immunity we must look to the language of the Faithful Performance Bond written by Reliance Insurance Company for the period beginning January 1, 1976. This was a blanket bond covering all state employees except treasurers and tax collectors. The coverage afforded by the bond is an issue that is properly raised by the Board in asserting the defense of sovereign immunity, without the implication that the bonding company alone could raise such an issue, and, perforce, is an indispensible party.

## III.

The law of New Mexico relating to sovereign immunity was drastically changed by the decision of this Court in *Hicks v. State, supra*. As it pertained to torts, that decision abolished the common law doctrine of sovereign immunity in New Mexico as it would apply to torts committed on or after July 1, 1976. By its express terms, it had no application to torts committed prior to that date. Therefore, the applicability of the defense of sovereign immunity to the case at bar is both limited and defined by the proviso contained in Section 5–13–4, quoted above. If there is no insurance, the defense of sovereign immunity is valid. It is as simple as that. Our only inquiry, therefore, is whether there was liability insurance coverage in effect.

The Faithful Performance Bond covered all state employees except treasurers and tax collectors. It was a blanket bond. The named obligee and insured in the bond is only the "State of New Mexico." The bond provides insurance for:

"1. Loss sustained *by the Insured* through any fraudulent or dishonest acts committed by any of its employees.

2. Loss caused *to the Insured* through the failure of employees to perform faithfully his duties and to account properly for all monies and property received by virtue of the employment." (Emphasis added.)

The express terms of the bond do not include losses caused to third persons or anyone other than the Insured State of New Mexico. To extend the bond to cover liability claims of any person or entity other than the State of New Mexico, the Insured, reads into the bond language that is not there.

We find no New Mexico decisions bearing upon the issue of liability insurance within the language of the Faithful Performance Bond. In 13 Couch on Insurance 2d (1965), the following sections are applicable:

Section 46:2:

Fidelity guarantee insurance is declared to be a contract whereby one for a consideration agrees to indemnify *the insured* against loss arising from the want of integrity, fidelity, or honesty of employees or other persons holding positions of trust. *It is considered to be a contract on which the insurer is liable only in the event of a loss sustained by the obligee.* (Emphasis added.)

Section 46:10:

[t]he measure of the liability of the insurer is that which is expressed by the terms of the contract. And as applied to fidelity bonds, this concept leads to the conclusion that a surety cannot be held liable beyond the terms of the bond.

In *Ronnau v. Caravan International Corporation,* 205 Kan. 154, 468 P.2d 118 (1970), the court stated that:

A fidelity bond is an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from want of integrity, fidelity or honesty of employees or other persons holding positions of trust. Such a contract is considered to be one on which the insurer is liable only in the event of a loss sustained by the insured. It is direct insurance procured by him in favor of himself, as contrasted with bonds running to the benefit of members of the public harmed by the misconduct of the covered individual, which bonds are third-party beneficiary contracts. (Citations omitted.)

·    ·    ·    ·    ·

As indicated, the appellant maintains the Blanket Honesty Bond insured against the liability of Caravan to third persons, and that INA became obligated on the bond to Caravan when it became liable to the appellant by reason of his judgment. Legal liability of the named insured to a third party does not, however, create a legal liability of INA to third parties under the bond. The claim of the third party appellant is not against INA, but against Caravan for failure to pay the judgment. Since contracting parties are presumed to act for themselves, an intent to benefit a third person should be clearly expressed in the contract. (Citations omitted.)

205 Kan. at 159, 468 P.2d at 122.

■ In the case at bar, the Doses erroneously presume that the bond must provide insurance coverage because the Board is liable to them in a way which fits within the bond coverage of the Board or "The State of New Mexico." Aside from running contrary to the law expressed in *Ronnau,* the factual hypotheses upon which such a posture must rest are specious and sophistic. The unambiguous language of the proviso quoted above from Section 5–13–4 which governs here, clearly indicates that insurance coverage must precede an act or occurrence before liability can rest upon such act or occurrence. Stated in another sense, liability can only rest upon prior insurance coverage—*only* prior insurance coverage would eliminate sovereign immunity as a complete defense. The Doses would take away the defense of sovereign immunity, necessarily, as the first step to impose liability. After thus imposing liability, they would find insurance coverage within the bond to cover that liability. Obviously, sovereign immunity is a valid and complete defense to the action brought by the Doses. The Faithful Performance Bond is clear and unambiguous in its terms. Those terms may be declared as a matter of law without resort to parol or other explanatory evidence. We conclude that liability insurance covering third parties is totally absent from the Faithful Performance Bond.

The judgment of the trial court and the decision of the Court of Appeals are reversed. This case is remanded to the trial court with instructions to enter an order dismissing the case.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, PAYNE and FEDERICI, JJ., concur.